## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| **JAYNE A. MATHEWS-SHEETS,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 1:08-cv-1426-WTL-DML** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner of** | ) | |
| **the Social Security Administration,** | ) | |
| | ) | |
| *Defendant.* | ) | |

### ENTRY ON JUDICIAL REVIEW

Plaintiff, Jayne A. Mathews-Sheets requests judicial review of the final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("the Commissioner"), denying Mathews-Sheets' application for Disability Insurance Benefits ("DIB").  The Court rules as follows.

### APPLICABLE STANDARD

To be eligible for DIB, a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382a(a)(3)(A).

In determining whether a claimant is disabled, the ALJ applies the five-step process set forth in 20 C.F.R. § 416.920:

1.    Is the claimant engaging in substantial gainful activity?  If so, she is not disabled.

2.    If not, does the claimant have an impairment or combination of impairments that are severe?  If not, she is not disabled.

3. If so, does the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, the claimant is disabled.

4. If not, can the claimant do her past relevant work?  If so, she is not disabled.

5. If not, can the claimant perform other work given her residual functional capacity ("RFC"), age, education, and experience?  If so, then she is not disabled.  If not, she is disabled.

The burden of proof is on the claimant for the first four steps and then shifts to the Commissioner at the fifth step.  *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits.  When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner.  *See, e.g.*, *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).  This Court will sustain the ALJ's findings if they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999).  In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ.  *See id.*  While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted."  *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993).  However,  the "ALJ's decision must be based upon consideration of all the relevant evidence."  *Herron v. Shalala*, 19 F.3d 329, 333 (7th

2

Cir. 1994).  Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate

conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the

[Court] to trace the path of his reasoning."  *Diaz*, 55 F.3d at 307.  In other words, the ALJ must

clearly articulate his analysis of the evidence, building an accurate and logical bridge from the

evidence to his conclusion.  *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002); *Clifford v.

Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).  An ALJ's articulation of his analysis "aids [the Court]

in [its] review of whether the ALJ's decision was supported by substantial evidence."  *Scott v.

Heckler*, 768 F.2d 172, 179 (7th Cir. 1985).

## Background

Mathews-Sheets was born on July 14, 1963, and has a high school education.  She has

performed past relevant work as a hospital secretary and nurse assistant.  Mathews-Sheets

applied for DIB on July 14, 2004.  In her application for benefits, Mathews-Sheets alleged that

she was disabled due to dyspnea, anemia, arthritis, hypercholesterolemea, fibromyalgia, and

myeloma.  Her application was denied initially and upon reconsideration, after which she

requested and was granted a hearing before an Administrative Law Judge ("ALJ").  Mathews-

Sheets was represented by counsel at the hearing, which was held on November 20, 2007.

Mathews-Sheets appeared with counsel and testified at an administrative hearing before an ALJ.

Thereafter, on January 30, 2008, the ALJ rendered his decision in which he concluded that

Mathews-Sheets was not disabled under the terms of the Social Security Act ("the Act").  The

Appeals Council denied Mathews-Sheets' request for review of the ALJ's decision on August 8,

2008.  Mathews-Sheets then filed this action for judicial review.

*Medical Evidence*

3

Mathews-Sheets aptly summarizes the evidence of record regarding her medical history as follows:

> The claimant, Jayne Mathews-Sheets, has multiple medical impairments, the most severe being fibromyalgia, chronic deep vein thrombosis and morbid obesity. Her fibromyalgia is confirmed by a rheumatologist, Dr Veronica Mesquida, who stated on numerous occasions that she has multiple triggerpoints, or tender points, and that her conditions worsened throughout her body with pain in her hands, shoulders, knees, hips, lower back, neck, feet, as well as stiffness, weight gain and fatigue. . . . A considerable complicating factor is her morbid obesity which exacerbates not only the fibromyalgia but all of her other medical impairments. Her various treating physicians repeatedly make note of this as a severe debilitating factor. She has even had consultation with a bariatric specialist, although bariatric surgery is not yet appropriate. Dr. Watt, who treated the claimant for seven years, stated that she has multiple medical problems and her long term prognosis is incredibly poor, secondary to weight, and that she is a walking time bomb for thromboembolic or coronary events. She has been diagnosed over the years with bilateral plantar fasciitis, by Dr. Conard, an orthopedic surgeon. Dr. Watt, Dr. Abonour and Dr. Tuttle have all treated her for recurrent venous thromboembolic disease and degenerative joint disease. Her attending physicians, Dr. Tuttle and Dr. Watt, recited a list of further impairments including restless leg syndrome, depression, peptic ulcer disease, hyperlipidemia and antiphospholipid antibody syndrome with multiple DVT's and pulmonary emboli. She has further had severe tricompartmental degenerative arthritis with the right knee. The claimant testified also that her continued swelling of her feet, which requires rest and elevation throughout the day  and her internal bleeding, which requires a shot every night.. . . [T]he record [also] reveals in various doctor reports that she has shortness of breath.

Mathews-Sheets' Brief at 6-7 (citations omitted).

*Consultative Examinations*

In late August 2004, Dr. Kennedy, a state agency physician, examined Mathews-Sheets and determined that she suffered from antiphospholipid syndrome, osteoarthritis in right knee, obesity, dyspnea, and non-cardiac chest pain.

On March 7, 2005, Mathews-Sheets underwent a Functional Capacity Evaluation at Witham Health Services by Mary Ping, a physical therapist. Ms. Ping found that Mathews-

4

Sheets' cervical range of motion and lower extremity joint mobility was functional. She also indicated that Mathews-Sheets' upper extremity mobility was limited. Ms. Ping concluded that Mathews-Sheets should be rated at sedentary work levels based upon her assessment but that "[t]here can be no recommendation for her to return to work based on her subjective complaints of pain and her pain behaviors."

*Hearing Testimony*

At the hearing, Dr. Mark Farber, a medical expert, testified that Mathews-Sheets suffers from chronic deep venous thrombosis for which she is on chronic anti-coagulation treatment, fibromyalgia, and morbid obesity. Further, he testified that she probably suffers from sleep apnea. Dr. Farber also noted that Mathews-Sheets has previously suffered from gastroesoophageal reflux disease, peptic ulcer, and a knee injury. Dr. Farber testified that Mathews-Sheets did not have a listed impairment and that based upon the objective medical evidence–and not considering any subjective complaints of pain–Mathews-Sheets would be limited to sedentary work.

Mathews-Sheets testified that fibromyalgia causes her to experience pain "all over," including pain in her joints, neck, shoulders, elbows, hands, fingers, back, hips, knees, legs and ankles. She testified that her fibromyalgia gradually became worse until she could no longer work at her job as a nurse's assistant and a secretary and was finally terminated due to her illness and many absences. She also testified that she experiences bad swelling in her legs and bruising due to her chronic deep vein thrombosis. If she takes her pain medication as prescribed it brings her pain level down from a 10 to a five (on a scale from 1-to-10), but the medication makes her sleepy, unable to concentrate, and "slow." She testified that her feet swell, causing pain and

5

unsteadiness, and the only remedy for the swelling is to lie down.  However, lying down causes her to experience the uncomfortable symptoms of restless leg syndrome.  She testified that she can only sit for 20 to 30 minutes before her legs started to "fall asleep," at which time she needs to get up and walk around.  However, she can only walk for a couple of blocks before experiencing shortness of breath and pain in her hips, back, legs and feet.  She testified that she could stand for 30 or 45 minutes.

After Mathews-Sheets concluded her testimony, vocational expert Robert Barber testified that Mathews-Sheets' past relevant work as a nurse assistant qualified as a medium, SVP 4, semi-skilled position.  Barber also testified that Mathews-Sheets' position as a hospital secretary would be qualified as sedentary, SVP 5, skilled.

## DISCUSSION

Applying the sequential evaluation process, at step one the ALJ found that Mathews-Sheets had not engaged in substantial employment since her alleged onset date.  At steps two and three, the ALJ concluded that Mathews-Sheets had the severe impairments of chronic deep vein thrombosis, fibromyalgia, and morbid obesity, but that none met or medically equaled a listed impairment.  At step four, the ALJ concluded that Mathews-Sheets retained the RFC to perform the full range of sedentary work, which included her past relevant work as a unit secretary; therefore, she was not disabled.

Mathews-Sheets asserts five errors by the ALJ, each of which is set forth and addressed, in turn, below, albeit in a somewhat different order than they are presented in Mathews-Sheets' brief.

### *Alleged Error*:  *The ALJ Did Not Apply the Correct Legal Standard in Determining Whether to Grant Controlling Weight to the Medical Opinions of Claimant's Treating Physicians*

6

*and Erroneously Disregarded These Opinions and in Doing So Failed to Recognize*
*Fibromyalgia as a Debilitating Disease in That the Client's Testimony of the Severity*
*of Her Disability Was Supported by Medical Evidence Which Precluded*
*Her from Significant Gainful Activity*

Mathews-Sheets correctly points out that "[a] treating doctor's opinion regarding the nature and severity of a medical impairment is entitled to controlling weight if supported by medical findings and [] consistent with substantial evidence in the record,"  Mathews-Sheets Brief at 17, and argues that the ALJ ignored or mischaracterized the opinions of her treating physicians.  Mathews-Sheets then points to the following evidence from her treating physicians:[1]

- Dr. Robert Watt opined that her long-term prognosis was "incredibly poor secondary to weight" and that she was a "'walking time bomb' for thrombotic or coronary events despite her young age."

- Dr. Veronica Mesquida's records indicate that Mathews-Sheets has fibromyalgia which causes her widespread pain.

- Dr. John Tuttle opined in a letter that "it is doubtful that Ms. Sheets would be physically able to maintain substantial, gainful employment due to [her] medical conditions that limit her physical performance."

Mathews-Sheets complains that the ALJ failed to even mention Drs. Watts or Mesquida in his

---

[1]Mathews-Sheets also asserts in her brief that orthopedic specialist Barth Conard "began treating Claimant in January 2005 for shoulder, knee, hip and foot pain" and that "his notes indicate that her primary problem was morbid obesity" which made it "difficult to help her feet." Actually, the letter from Dr. Conard in which he made that comment indicated that he had not "treated" Mathews-Sheets at all, but rather he had "only been asked to evaluate her feet and she has not come back for follow up appointments."  Dr. Conard also stated that could not "make an evaluation of how she is doing now."  Therefore, the Court disagrees with Mathews-Sheets' characterization of Dr. Conard as a treating physician and finds that it was not error for the ALJ to fail to mention him.

decision.  However, Dr. Mesquida's records merely establish that Mathews-Sheets has been

diagnosed with fibromyalgia and that it causes her pain, both of which the ALJ found to be the

case.  Further, while, as Mathews-Sheets points out, Dr. Watt expressed grave concern about the

effect of her weight on her long-term prognosis, she points to no opinions of Dr. Watt regarding

the issue before the ALJ–her present ability to work; therefore, the fact that the ALJ's decision

does not mention Dr. Watt is not error.  *See Carlson,* 999 F.2d at 181 (ALJ "need not evaluate in

writing every piece of testimony and evidence submitted").

> With regard to Dr. Tuttle, the ALJ noted the following:
>
> The residual functional capacity herein is consistent with the opinions of the [sic.]
> John Tuttle, M.D., the claimant's treating physician, and Mark Farber, M.D., the
> medical expert.  Each physician noted the claimant's ability to perform sedentary
> work activities.  Dr. Tuttle's opinions is the [sic.] derived from clinical
> examination and ongoing treatment.  His opinion is congruous with the medical
> evidence and is therefore entitled to significant weight. . . .  On the other hand,
> controlling weight or special significance is not given to Dr. Tuttle's notation
> regarding the claimants' inability to "maintain substantial gainful employment" as
> this addresses a mater that is reserved to the Commissioner pursuant to Social
> Security Rulings 96-5p.

Record at 28 (citations omitted).  While Mathews-Sheets asserts that "the record does not reflect

any opinion of Dr. Tuttle which endorses claimant's ability to perform sedentary activities in any

way," Mathews-Sheets Brief at 23, in fact Dr. Tuttle's letter includes the following statement:

"Please see attached Functional Capacity Evaluation.  This study is an excellent tool in

determining a patient's physical limitations and disabilities."  Record at 541.  The attached

functional capacity evaluation report, in turn, concludes that "Ms. Mathews-Sheets [sic.] ability

is rated at SEDENTARY work levels.  There can be no recommendation for her to return to

work based on her subjective complaints of pain and her pain behaviors."  *Id.* at 540.  Therefore,

the ALJ's statement regarding Dr. Tuttle was not error; Dr. Tuttle did, in fact, endorse the

finding that–putting her subjective complaints aside[2]–Mathews-Sheets was capable of sedentary work.

Mathews-Sheets also suggests that the ALJ should have given Dr. Tuttle's opinion that Mathews-Sheets was unlikely to be able to "maintain substantial gainful employment" controlling weight. This is incorrect. While "[a] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record . . . [a] claimant . . . is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work' [because u]nder the Social Security regulations, the Commissioner is charged with determining the ultimate issue of disability." *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2) & (e)); *see also Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002) ("Further, Dr. Olson's general opinion that Johansen was 'unable to work gainful employment because of his chronic neck [pain], left arm pain and low back pain' is not conclusive on the ultimate issue of disability, which is reserved to the Commissioner."). The ALJ was not required to accept Mathews-Sheets' treating physicians' opinions regarding her ability to work; rather, the ALJ had the responsibility to make his own determination on that ultimate issue based upon all of the evidence of record.

### Alleged Error:  The ALJ Used an Incorrect Legal Standard in Assessing Claimant's Disability

Mathews-Sheets argues as follows:

At Step Two of the determination, the ALJ found Claimant's fibromyalgia, morbid obesity, and chronic deep vein thrombosis to be severe impairments.  Yet at Step

_____

[2]The ALJ's treatment of Mathews-Sheets' subjective complaints is discussed below.

> Three, the ALJ found no impairments or combination of impairments that met or
> equaled a listing.  Specifically, the ALJ stated that there is no listing for
> fibromyalgia, so he used the listing requirements of 14.09 for inflammatory
> arthritis to evaluate Claimant's fibromyalgia.  Since fibromyalgia is not the same
> as inflammatory arthritis, on its face, it is clear that the ALJ used the incorrect
> legal standard to deny disability benefits to Ms. Sheets.

Mathews-Sheets Brief at 8.  What follows is a lengthy discussion regarding the fact that

fibromyalgia is recognized by the Commissioner as a medically determinable impairment and

that the evidence of record demonstrates that Mathews-Sheets does, in fact, suffer from it.  There

is nothing in the ALJ's decision that suggests otherwise, and nothing that suggests that the ALJ

believes that fibromyalgia cannot be a disabling condition.  Rather, the ALJ expressly

determined that fibromyalgia is one of Mathews-Sheet's severe impairments.

Mathews-Sheets seems to misunderstand the import of the ALJ's finding at step three

that she does not suffer from any listed impairment or its equivalent when she argues that:

> the ALJ failed to follow established legal standards because he refused to
> recognize consistent evidence of multiple tender points as objective medical
> evidence of fibromyalgia. In this matter, the ALJ repeatedly called for objective
> medical evidence at the hearing, and denied disability benefits to Ms. Sheets
> because he could not find any objective medical evidence to establish a listed
> disability or its medical equivalent.

Mathews-Sheets Brief at 11.  Again, the ALJ clearly found that Mathews-Sheets suffers from

fibromyalgia.  His determination that her fibromyalgia does not meet or equal any listed

impairment is not the equivalent of finding her not disabled, as having a listed impairment or its

equivalent is only one way to satisfy the definition of disability.  In fact, the ALJ was correct

when he found that there is no Listing for fibromyalgia, and Mathews-Sheets points to no Listing

that was a more appropriate comparison that 14.09; nor does she even attempt to demonstrate

that her fibromyalgia equals that or any other Listing.  Accordingly, to the extent that Mathews-

Sheets argues that the ALJ's step three analysis was legally deficient, she has failed to support that argument.

Also under this heading, Mathews-Sheets, citing *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004), takes issue with the ALJ's determination that her testimony regarding the extent of her pain was not fully credible.  Mathews-Sheets argues that

> once she presented medical evidence of her fibromyalgia, obesity, etc., the ALJ should not have been able to attack her credibility by asserting that her testimony about pain and symptoms was unsupported by objective evidence. Taken together, the evidence from the treating doctors and the claimant's testimony about pain and suffering should have formed an impenetrable barrier preventing the ALJ from discrediting Ms. Sheets' testimony about symptoms.

Mathews-Sheets Brief at 13.  This argument mischaracterizes the ALJ's decision.  *Carradine* (and the regulation upon which it relies) stand for the proposition that testimony regarding pain and other symptoms cannot be rejected "solely because the available objective medical evidence does not substantiate" the testimony.   20 C.F.R. § 404.1529(c)(2).  The ALJ expressly recognized that fact in his decision, noting that "[b]ecause a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective evidence alone, 20 CFR 404.1529(c) describes the kinds of evidence . . . that must be considered in addition to the objective medical evidence when assessing the credibility of the claimant's statements."  Record at 29.  Accordingly, Mathews-Sheets is simply incorrect when she argues that the ALJ rejected her allegation of disabling pain because of a lack of objective evidence.

### *Alleged Error:  The ALJ erred in improperly evaluating and weighing the credibility of Claimant's evidence as to her symptoms, pain, and activities of daily life pursuant to correct legal standards.*

Although the ALJ properly articulated the applicable legal standard with regard to evaluating Mathews-Sheets' allegation of disabling pain and other subjective symptoms, the

Court agrees with Mathews-Sheets that the ALJ's evaluation of her credibility with regard to that

allegation falls short.   Because the ALJ evaluates credibility by questioning and observing a live

witness, not simply a cold record, an ALJ's credibility determination is reviewed deferentially

and should be overturned only if it is "patently wrong."  *Craft v. Astrue*, 539 F.3d 668, 678 (7th

Cir. 2008).  However, "[t]he determination of credibility must contain specific reasons for the

credibility finding" and "must be supported by the evidence and must be specific enough to

enable the claimant and a reviewing body to understand the reasoning."  *Id.* (citing *Arnold v.

Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

As described above, Mathews-Sheets testified at length regarding the pain and other

symptoms that she suffers as a result of fibromyalgia and chronic deep vein thrombosis.  The

Court notes that–consistent with Mathews-Sheets' testimony–the record is replete with

statements from Mathews-Sheets' physicians regarding the pain she experiences, and the

Commissioner points to no suggestion in the record that her medical care providers believe that

she is malingering or exaggerating her complaints of pain.

There is no question that if Mathews-Sheets' testimony is fully credited, a finding of

disability would be required.  The ALJ found her to be not entirely credible, however,

explaining:

> The claimant's daily activities, in contrast to her hearing allegations, illustrate a
> moderate level of activity.  In January of 2005, she reported only a mild reduction
> in her activities of daily living.  She independently attends to her personal
> hygiene, prepares meals, performs household chores including laundry, and does
> yard work, albeit at a slower pace. She shops for groceries and assists in the care
> of her grandchildren.[3]  This evidence demonstrates the claimant's capacity to

_____

[3]In the absence of any information regarding the age of the grandchildren and what type
of assistance with their care Mathews-Sheets provides, it is impossible to say whether that

> engage in a considerable amount of activity despite her symptoms.  Although the
> ability to engage in activity in a non-work setting is recognized as not the
> equivalent of performing the same activities in a work setting on a eight-hour-a-
> day and five-day-a-week basis, neither can the daily activities simply be ignored
> because they are not performed eight hours per day.  The claimant's daily
> activities affirmatively demonstrate that she is capable of some physical activity,
> and in this particular case is consistent with the restricted residual functional
> capacity found herein.

Record at 29.  Examination of the record compels a finding that the ALJ's statements regarding

Mathews-Sheets' daily activities distort the evidence.  The ALJ cites a form completed by

Mathews-Sheets in July 2004 which asked whether she did the following activities at a "normal"

pace, a "slower" pace, or not at all:  showering, getting dressed, making a bed, cooking, dusting,

laundry, grocery shopping, and yard work.  Mathews-Sheets indicated that she did all of those

activities at a slower pace, and wrote in after dusting and yard work that those activities were

"limited."  In the narrative portion of the form, she explained that she had to rest several times

during an activity, that she could not stand for very long and walking was "getting harder," and

that "going shopping is very limited" because of her limited ability to be on her feet.  Contrary to

the ALJ's finding, this form, taken as a whole, does not "demonstrate[] the claimant's capacity to

engage in a considerable amount of activity despite her symptoms," but rather demonstrates that

she attempted to take care of her daily needs the best that she could in spite of her limitations.

An ALJ cannot disregard a claimant's limitations in performing household activities, *Moss v.*

*Astrue*, 555 F.3d 556, 562 (7th Cir. 2009), yet that is precisely what the ALJ did.  Further, the

Court wholly disagrees with the ALJ's implication that the fact that Mathews-Sheets is "capable

of some physical activity" is inconsistent with her claim that she is unable to work due to the

---

activity is inconsistent with her allegation of disabling pain.

pain she experiences.

In addition to his findings regarding Mathews-Sheets' daily activities, the ALJ noted the

following in support of his credibility determination:

> While there can be no doubt that the claimant has some pain and discomfort
> associated with her impairments, the overall evidence does not substantiate the
> extreme symptoms to which she testified.  In November of 2006, she was
> described as clinically stable.  In August and October 2007, she characterized the
> numbness and tingling of her hands as "not a major problem," reported an
> improvement in her joint symptoms with steroid treatment, and denied headaches.
> Her venous thromboembolic disease was described as stable.  She has maintained
> adequate functional ability (i.e., normal gait and station, ability to walk on heels
> and toes, normal motor strength, normal sensory and reflexes).  Her physician's
> recommendation that she being an aerobic exercise regiment is a further
> indication of her sustained functionality.  The residual functional capacity factors
> the claimant's subjective reports of pain and discomfort with the limitation to
> sedentary work.[4]

Record at 30.  Again, the Court finds that the facts pointed to by the ALJ are not inconsistent

with Mathews-Sheets' subjective allegations.

It is true that a physician noted in November of 2006 that she had been "clinically stable"

since her last visit in June 2006; this means only that her condition had not worsened, and says

nothing about the severity of her condition or its effect on her ability to work.  The same is true

---

[4]It is unclear exactly what the ALJ means by this sentence.  If the ALJ means that
Mathews-Sheets' testimony about her symptoms is consistent with sedentary work, that clearly
is incorrect.  Not only did Mathews-Sheets testify that her pain was disabling, but her treating
physician believed so as well.  In addition, the medical expert made it clear several times at the
hearing that his opinion that Mathews-Sheets could work at the sedentary level *did not* take into
account her subjective complaints.  *See* Record at 696 ("[b]ut once again you asked for the
objective"); *id.* at 698 (acknowledging in the affirmative the ALJ's admonition that "you're only
here to tell us . . . what the objective medical evidence shows and what's in the medical record,"
not to discuss "the pain aspect"); *id.* at 701 ("what we're really dealing with is the subjective
complaints, how bad they are in relationship to what we have that is documentable in terms of
the objective findings and that's for the Judge to decide"); *id.* (it's up to the Judge now to . . .
evaluate the subjective debilitation because there's no way for me to actually access that . . . just
as it wasn't for the people who did the FCE").

of the fact that "her venous thromboembolic disease was described as stable"; a condition can be disabling and stable at the same time.  Inasmuch as Mathews-Sheets does not rely on numbness and tingling in her hands as a disabling symptom, the fact that she described that symptom as "not a major problem" in 2007 is irrelevant, and the ALJ failed to note that the same physician note also indicates that Mathews-Sheets was reporting worsening hand pain, consistent with her testimony at her hearing.  While the physician did note that she reported an improvement in her joint symptoms with steroid treatment, she also noted in the same treatment note that Mathews-Sheets still experienced pain in her shoulders, knees, hips, lower back, neck, and feet and frequent headaches; this is entirely consistent with Mathews-Sheets' testimony that her pain level decreases from a 10 to a 5 when her pain medication is working.  Thus, upon examination none of these medical records is inconsistent with Mathews-Sheets' testimony regarding the extent of her pain and other symptoms.  Neither is the fact that she "has maintained adequate functional ability"; the fact that she exhibits normal gait and station, the ability to walk on her heels and toes, normal motor strength, and normal sensory and reflexes does not mean that she does not experience substantial pain with activity as she testified.  Finally, the fact that her physician recommended that she begin an aerobic exercise regiment also does not contradict her allegation of disabling pain; there is nothing inconsistent about a person who is in too much pain to work a full-time job engaging in exercise, *cf. Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) ("Since exercise is one of the treatments that doctors have prescribed for Carradine's pain, and she does not claim to be paralyzed, we cannot see how her being able to walk two miles is inconsistent with her suffering severe pain."), especially the water aerobics recommended by her doctor.

15

The ALJ goes to great lengths to explain his finding that Mathews-Sheets' testimony regarding the level of pain and other subjective symptoms that she experiences was not fully credible.  However, the evidence of record he claims is inconsistent with Mathews-Sheets' testimony simply is not.  Accordingly, the ALJ's credibility determination is not supported by the evidence and must be reversed.

***Alleged Error Three:  The ALJ failed to use correct legal standards under SSR 96-8p to properly analyze the combination of Claimant's impairments, specifically the impact of her morbid obesity, at Step Three as well as other impairments including but not limited to bilateral plantar fasciitis, the swelling of her feet, recurrent venous thromboembolic disease, peripheral neuropathy, degenerative arthritis in the right knee and the affects [sic.] of medication.***

The Court agrees with Mathews-Sheets that the ALJ's decision does not adequately demonstrate that he considered the effects of her morbid obesity on her subjective symptoms.  The medical evidence of record overwhelmingly indicates that every aspect of  Mathews-Sheets' life is affected by her weight–particularly the pain she experiences– and yet the ALJ does not address that fact at all in his decision.  This was error.  *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (reversing for, *inter alia*, ALJ's failure to "analyze what effect Villano's obesity had on her arthritis under S.S.R. 02-1p").  Neither did the ALJ analyze the effect of all of Mathews-Sheets' impairments in combination on her residual functional capacity.   The ALJ should do both upon remand.

***Alleged Error:  The ALl erred in failing to find that the claimant met Step 5 of the Commissioner's Five Step Sequential Evaluation Process in determining that the claimant had sufficient residual functional capacity to maintain substantial gainful activity and work eight hours a day, forty hours a week.***

Much of Mathews-Sheets' argument under this heading relates to the issue of whether the ALJ's credibility determination was adequate, which already has been addressed above.  To the

extent that Mathews-Sheets argues that the ALJ somehow erred at step five is without merit. The ALJ did not make a step five determination because he found that she could perform sedentary work and then found at step four–based upon the testimony of the vocational expert– that Mathews-Sheets' past job as a unit secretary was at the sedentary level.  Based upon these findings, the ALJ found that Mathews-Sheets was able to perform her past relevant work as a unit secretary.  Therefore it was unnecessary for the ALJ to move on to step five.

## CONCLUSION

In finding that Mathews-Sheets retained the residual functional capacity to perform a full range of sedentary work, the ALJ in this case relied primarily upon medical opinions regarding her residual functional capacity that did not take into account her subjective symptoms.  In finding that Mathews-Sheets' allegation of disabling pain and other symptoms was not fully credible, the ALJ relied upon evidence of record that simply is not inconsistent with her allegation and does not support a finding that her pain is something less than disabling. Accordingly, this case must be, and is, **REVERSED AND REMANDED** for proceedings consistent with this Entry.  In addition to addressing the credibility issue, the ALJ shall on remand fully address the effects of Mathews-Sheets' obesity and her impairments in combination on her ability to perform substantial gainful activity.

SO ORDERED:   03/11/2010

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

17

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

C. David Little
POWER LITTLE & LITTLE
powerlittl@accs.net