UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAYNE A. MATHEWS-SHEETS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:08-cv-1426-WTL-DML |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ENTRY REGARDING ATTORNEY FEES

After the Court remanded this case to the Commissioner of Social Security ("Commissioner") for further proceedings, the Commissioner awarded Plaintiff Jayne A. Mathews-Sheets disability benefits. In the meantime, Mathews-Sheets filed a motion seeking an award of attorney fees pursuant to the Equal Access to Justice Act ("EAJA"). The Court awarded fees in the amount of $6,625; she appealed that ruling, arguing that her attorney was entitled to more. As discussed in more detail below, the appellate court reversed and remanded that decision for further consideration by this Court. The parties have submitted their post-remand briefs and the issue is now ready for review and resolution.

In addition, after the Commissioner made its award to Mathews-Sheets, her attorney filed a motion seeking approval of an award of fees pursuant to 42 U.S.C. 406(b). That motion also is ripe for resolution.

## EAJA FEES

In her initial motion for an award of attorney fees pursuant to the EAJA, Mathews-Sheets' attorney, C. David Little, requested an award of $25,200. The Court awarded $6,625, after

reducing both the number of hours and the hourly rate urged by the attorney. Mathews-Sheets appealed that ruling, and the court of appeals reversed and remanded the case to this Court with the following instructions:

- the "entire scope of the remand" should be to "take a further look at the plaintiff's request for a cost of living adjustment" to the $125 per hour presumptive ceiling provided by the EAJA;[1] and

- in order to demonstrate that a cost of living adjustment is appropriate, "on remand plaintiff's lawyer will have to show that without a cost of living increase that would bring the fee award up to $170 per hour, a lawyer capable of competently handling the challenge that his client mounted to the denial of social

---

[1] Mathews-Sheets' attorney ignores this explicit limit on the scope of the remand by arguing that he is entitled to a higher hourly rate based upon the "special factor" of the limited availability of attorneys in Frankfort, Indiana, who represent social security claimants at the district court level. In stating that the "entire scope of the remand" should be the propriety of a cost of living adjustment, the Seventh Circuit noted that "[t]he plaintiff's lawyer mentioned nothing other than inflation that must justify a fee award above the statutory presumptive ceiling," and further commented that "it is doubtful that he could have identified another justification in this case." *Mathews-Sheets*, 653 F.3d at 564. Given these instructions, the plaintiff's attorney is not entitled to attempt to demonstrate the existence of a "special factor" on remand. Even if he were, the information he provides falls short. The crux of his argument is that he is "aware that no one else in his city or county offers appellate legal services to SSA claimants, [so u]nless I am retained by such claimants, they must travel to Lafayette, Indiana or to Indianapolis, Indiana for these appellate services." Little Affidavit at ¶ 12. However, he fails to give any information about the availability of attorneys doing this type of work in Indianapolis; nor does he assert that it would have been unduly burdensome for Mathews-Sheets to travel to Indianapolis for legal assistance. The Court does not believe it would have been, especially in light of the fact that, at least according to her complaint in this case, Mathews-Sheets did not live in Frankfort, Indiana, when she hired her attorney, but rather in Lebanon, Indiana, which, per Mapquest, is only nine miles further from Indianapolis than it is from Frankfort. Therefore, even assuming that a shortage of attorneys who routinely take these types of cases in the relevant geographical area could justify the type of enhanced rate the attorney seeks, he has not demonstrated the existence of such a shortage.

2

> security disability benefits could not be found in the relevant geographical area to handle such a case."

*Mathews-Sheets v. Astrue*, 653 F.3d 560, 564, 565 (7th Cir. 2011).

In its opinion, the Seventh Circuit found unequivocally that Mathews-Sheets' attorney did not make the showing necessary to demonstrate that a cost of living adjustment was appropriate in this case in his pre-appeal filings before this Court:

> The framers of the Equal Access to Justice Act were right therefore not to create an *entitlement* to an inflation adjustment; the lawyer seeking such an adjustment must show that inflation has increased the cost of providing adequate legal service to the person seeking relief against the government. . . . No such showing was made.

*Id.* at 563 (emphasis in original). The Court presumes, then, that it was appropriate–indeed necessary–to give the attorney another opportunity to make the requisite showing on remand.

To that end, Mathews-Sheets' attorney now has offered two new pieces of information in support of his request for a cost of living adjustment. First, he has offered more detailed information regarding his calculations based upon the Consumer Price Index ("CPI") than he did originally, breaking his calculations down by each year in which he provided legal services in this case and revealing the CPI that he used was that for services in Class D cities in the Midwest. While that information provides a more accurate calculation of what the statutory rate would be if the statute provided for an automatic increase based upon the CPI, as noted above that is not what the statute provides, and therefore more information is needed to establish that an increase is appropriate in this case.

Mathews-Sheets' attorney purports to provide that additional information in a chart in which he compares the amount that his law practice spent on various categories of expenses in

3

1996, the year the $125 rate was established, with the amount his law practice spent on those categories in 2010. The data contained in that chart, the attorney argues, demonstrates that his law firm's cost of practicing law rose 99.7% between 1996 and 2010. The attorney submits that this evidence satisfies the requirement set forth in the appellate opinion that counsel provide "evidence of an increase in the actual cost of doing business in his particular practice of law from 1996 to 2011 in order to obtain an enhanced rate based on inflation." Plaintiff's Post-Remand Brief at 5 n.2. However, that is not what the opinion required. The court did state that "[a]n inflation adjustment must . . . be justified by reference to the particular circumstances of the lawyer seeking the increase." *Mathews-Sheets*, 653 F.3d at 563-64. However, simply showing, as the lawyer has here, that the amount his law firm spent on various categories of expenses has increased during the relevant time period[2] is not sufficient to show how much, if any, of the increase in expenses was *due to inflation* rather than simply due to choices that the law firm made.

To give a general example, suppose in 1996 a young, newly married couple living in Frankfort, Indiana, decided to save for a down payment on a house and therefore carefully limited their food expenditures by taking measures such as planning grocery shopping around store sales, using coupons extensively, eating leftovers, and eschewing restaurants. Suppose that same not-quite-so-young couple today still live in Frankfort, Indiana, but are now the busy parents of three growing children. Suppose further that they have been successful in their careers and now have a great deal of discretionary income, much of which they choose to spend

---

[2]Actually, the chart provided by counsel does not indicate that his expenses *increased over the relevant time period*, as counsel asserts, but simply that they were higher in 2010 than they were in 1996.

on convenience foods and restaurant meals. In addition, they choose to have their groceries delivered to their home, something for which they pay a premium. The fact that the family spent many times more on food in January 2012 than it did in January 1996 obviously is not evidence that the cost of food in Frankfort, Indiana, is many times greater in 2012 than it was in 1996. While some of the family's increased food cost undoubtedly is related to inflation–a gallon of milk certainly costs more now than it did in 1996, for example–the bulk of it is related to factors entirely unrelated to inflation, specifically the family's choices regarding how and where to purchase its food, as well as the increased size of the family.

The same is true with the data contained in the chart submitted by counsel in this case. Without more information, it is impossible to know whether the reason the law firm spent, for example, $1,684 for advertising in 1996 and $5,043 for advertising in 2010 is inflation (an increase in the cost of purchasing advertising) or something else, perhaps a change in the law firm's philosophy regarding the appropriate amount of advertising a law firm should do. Similarly, the law firm spent $715 for professional development in 1996 and $6700 in 2010. Perhaps inflation has increased the cost of professional development for lawyers by more than 800%, or perhaps the attorney decided to splurge and take a trip to Hawaii for his continuing legal education in 2010, whereas in 1996 he chose to make the short drive to Indianapolis. Conversely, the chart indicates that the law firm spent $4,757 on office equipment in 1996 and $0 in 2010, but counsel obviously is not suggesting that the price of office equipment has decreased by 100% over that time period.[3]

---

[3]As counsel himself recognizes in the footnotes in the chart, certain costs are cyclical; the law firm likely does not need a new copy machine every year, but neither will the copy machines it has last forever. Therefore, the amount spent in a particular year for office equipment is not

Counsel's assertion that the data in his chart shows that "the actual cost for C. David Little to practice law in Frankfort, Indiana has risen 99.7% from 1996 to 2010," simply is incorrect. What the chart does show is that C. David Little's law firm *spent* 99.7% more in 1996 than it did in 2010. Counsel has failed to explain why it did so, and therefore has failed to show to what extent, if any, it did so due to inflation.

The Court is therefore left with no more relevant information than it had prior to remand, which the Court of Appeals has already found to be inadequate. *See id.* at 563 ("No such showing was made."). Accordingly, the Court once again determines that Mathews-Sheets is entitled to EAJA fees in the amount of $6,625.00, or 53 hours times $125 per hour.[4]

## FEES PURSUANT TO 42 U.S.C. § 406(b)

Social Security claimants who are successful before the district court may, as Mathews-

---

necessarily indicative of *the cost* of office equipment, but rather of where in the cycle of office equipment purchases the year in question fell. This is just one example of why a comparison of financial snapshots of two different years is unhelpful.

[4] The Court notes that Mathews-Sheets' attorney ends his post-remand brief with the observation that "an enhance [sic.] hourly rate of $190 in 2010 is significantly below the market rate of $250-300 for the same kind and quality of legal services as performed in this case, but it comes closer to the target than does the statutory rate or the CPI enhanced rate alone." Mathews-Sheets' Post-Remand Brief at 8. Counsel should note that "the target" in this instance is not to match the market rate. *See Mathews-Sheets*, 653 F.3d at 563 ("The Equal Access to Justice Act does not authorize an award of the prevailing hourly rate, as such, unless it is less than $125 an hour."). If Congress intended for courts to award social security lawyers the prevailing market rate (absent special circumstances justifying a higher or lower rate, of course), it would have provided in the EAJA, as it does in many other statutes, for an award of a reasonable attorney fee without providing a ceiling. It did not do so. Further, lest counsel believe the amount of EAJA fees awarded in this case is exceptionally low compared to other EAJA fee awards in this district, the contrary is actually true. A review of 52 EAJA fee awards made by the judges in this district in cases that were closed in 2010 and 2011 reveals a range between $1,748 and $10,771; only seven of the awards were higher than the $6,625 awarded in this case, all but eleven of them were lower than $6,000, and more than half of them were lower than $4,200.

Sheets did, request an award of attorney fees pursuant to the EAJA. If the claimant ultimately is successful in obtaining an award of benefits from the Commissioner, he or she (or, more accurately, his or her attorney) may move for an award of attorney fees pursuant to 42 U.S.C. § 406(b), which provides, in relevant part:

> (b) Fees for representation before court
>
> (1)(A) Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 405(i) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.
>
> ***
>
> (2) Any attorney who charges, demands, receives, or collects for services rendered in connection with proceedings before a court to which paragraph (1) of this subsection is applicable any amount in excess of that allowed by the court thereunder shall be guilty of a misdemeanor and upon conviction thereof shall be subject to a fine of not more than $500, or imprisonment for not more than one year, or both.

"The Commissioner has interpreted § 406(b) to 'prohibi[t] a lawyer from charging fees when there is no award of back benefits.'" *Gisbrecht v. Barnhart*, 535 U.S. 789, 795 (2002) (citations omitted). And, other than an award under the EAJA, § 406(b) is "the exclusive method for paying an attorney who represents a Social Security claimant in federal court" for work done before the court.[5] *Murkeldove v. Astrue*, 635 F.3d 784, 789 (5th Cir. 2011); *see also Crawford v. Astrue*, 586

---

[5] An award of fees may be made by the Commissioner for work done at the administrative level pursuant to 42 U.S.C. § 406(a). It appears that "[t]here is currently a Circuit split on the issue of whether the Social Security Act, pursuant to the cap articulated in section 406(b), limits the combined total of attorney's fees awarded under section 406(a) and section 406(b) to 25% of past-due benefits." *Murkeldove*, 635 F.3d at 788 n.1 (citing *Clark v. Astrue*, 529 F.3d 1211, 1214–15 (9th Cir. 2008) (collecting cases)). It does not appear that the issue has been addressed

F.3d 1142, 1147 (9th Cir. 2009) ("[t]he court-awarded fee is the only way a successful SSDI attorney may recover fees for work performed before the district court. In fact, it is a criminal offense for an attorney to collect fees in excess of those allowed by the court."). "If the court awards fees under both the Social Security Act and the Equal Access to Justice Act, as it is allowed to do, only the larger of the two awards may be collected." *Mathews-Sheets,* 635 F.3d at 562.

After the Court remanded this case for further consideration by the Commissioner, the Commissioner awarded benefits to Mathews-Sheets and she received past-due benefits in the amount of $61,425. Mathews-Sheets' attorney, C. David Little, then filed a motion pursuant to 42 U.S.C. § 406(b) seeking an award of fees payable out of those past-due benefits in the amount of $23,850, with the requirement that he "reimburse Sheets the amount of $6,636 for the EAJA fees previously paid [sic.] any other amounts allowed under EAJA by the District Court Judge upon rehearing." Little Brief at 2.

The Court was entirely baffled by Little's brief. Little stated that he was entitled to 25% of Mathews-Sheets' past-due benefits pursuant to a contingency fee agreement, but the amount that he asked for–$23,850–was over 38.8% of her past-due benefits award of $61,425. He apparently believed that the relevant inquiry was not how much he should receive, but rather how much Mathews-Sheets should be required to pay, suggesting that the amount that he was asking for would amount to a "net" payment by Mathews-Sheets of 25% once he reimbursed her for the EAJA fees he had received. But even then his figures did not add up; $6636 subtracted from $23,850 is $17,214, which is 28% of her past-due benefits award. And, of course, the EAJA

---

by the Seventh Circuit Court of Appeals, and this Court need not address it in this case.

8

award was $6,625, not $6,636. Further, and alarmingly, Little made the following assertion in his brief:

> Counsel reasonably expended 106 hours in the representation of Sheets before this court. The government and this court have conceded that the time expended is reasonable in the prior stipulation and award of fees under the EAJA in the amount of $6,636.00.

*Id.* at 6. The Court is not sure how it could have "conceded" anything in this or any other case, and the Commissioner, of course, made no such concession here. Quite to the contrary, the Commissioner vigorously argued that the 106 hours expended by Little in this case were excessive; the Court agreed and reduced the number of hours used to calculate the EAJA fee award to 53.

The Commissioner filed a response in which he pointed that Little was seeking more than the 25% maximum provided for in § 406(b). The Commissioner also argued that Little was required to provide information regarding his normal hourly billing rate for non-contingent cases so that the Court could determine whether an award of 25% would be a windfall.

Little then filed a document entitled Motion for Leave to Amend, Correct, and Supplement Plaintiff's Motion for Attorney Fees Pursuant to 42 U.S.C. § 406(b) in Reply to the Defendant's Response in Opposition to the Plaintiff's Motion for an Award of Attorney Fees under 42 U.S.C. § 406(b), along with a brief entitled Memorandum of Law in Reply to Defendant's Response in Opposition to the Motion for Attorney Fees Pursuant to 42 U.S.C. § 406(b).[6] In this brief, he asks the Court to award him "at least" $15,356.25, which is 25% of Mathews-Sheets' past-due

---

[6]It is not clear whether Little intended this "reply" brief to be considered as a traditional reply brief or whether it was intended to replace his original brief.

benefits, still not quite acknowledging that § 406(b) limits his award to *at most* $15,356.25.[7] Little also acknowledges that the Court did not find that he reasonably expended 106 hours in this case, but rather awarded him EAJA fees based on 53 hours.

While Little has corrected his arithmetic in his reply brief, his argument does not fare as well. Little bases his request for 25% of Mathews-Sheets' past-due benefits on a contingency fee agreement that he asserts entitles him to receive such a fee in the event she receives a favorable result. It does not. The fee agreement between Little and Mathews-Sheets contains the following provision:

> That should the Client obtain a favorable decision in respect to said matter, that the Attorney is entitled to a fee equal to the lesser of Twenty-Five (25%) Percent of all past-due benefits received by the Client or $5300 allowed by Social Security regulations as a result of a favorable determination.

This provision clearly does not constitute an agreement by Mathews-Sheets to pay 25% of any past-due benefits she obtains to Little. Rather, pursuant to this provision Mathews-Sheets agreed to pay Little *the lesser of* 25% or $5,300 if she received a favorable determination. This provision is, of course, consistent with a fee award for work at the administrative level pursuant to § 404(a).

The fee agreement also provides the following:

> Further, the Client recognizes and agrees that the Attorney has a right to submit to the Social Security Administration a request for additional costs and legal fees in the event that an appeal is necessary pursued [sic] to the U.S. District Court or the Seventh Circuit Court of Appeals or any other Court of proper jurisdiction and that these fees may be submitted under 42 U.S.C. § 406(b) or under the Equal Access to Justice Act.

This provision also does not obligate Mathews-Sheets to pay Little 25% of her past-due benefits; indeed, it is not at all clear that it obligates Mathews-Sheets to pay anything at all. The Court, of

---

[7]He also correctly references the amount of the EAJA fees previously awarded.

course, knows that 42 U.S.C. § 406(b) provides for fees to be paid out of past-due benefits, but it is very likely that to a lay person the provision reads as if any "additional costs and legal fees" requested by Little would be paid by the Social Security Administration, not Mathews-Sheets. Further, under the plain language of the provision, Little is entitled to submit a request for additional fees *to the Social Security Administration*; nothing in the fee agreement provides for a request for additional fees *to this (or any other) court*, which conflicts with the references to § 406(b) and the EAJA, both of which require submissions to the court, not the agency.

Under Indiana law ambiguities in contracts are construed against the drafter. *MPACT Const. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004). Application of that principle is especially apt in this case, in light of the fiduciary duty Little owed to his client and the fact that it would not have been difficult for Little to draft a clear and unambiguous fee agreement. Applying that principle to the fee agreement, the Court holds that the fee agreement between Mathews-Sheets and Little limits the amount Mathews-Sheets would have to pay in attorney fees to $5,300 and does not authorize Little to ask the Court to award additional fees to be paid out of Mathews-Sheets' past-due benefits.

Even if the Court were to assume, despite the problematic language in the fee agreement, that Mathews-Sheets intended to and did in fact agree that Little could request an award of fees greater than $5,300 to be payable out of her past-due benefits, the Court would not make such an award in this case. Under the plain language of the statute, awarding fees under § 406(b) is discretionary. The Court has found little guidance regarding how that discretion should be exercised. However, the Supreme Court in *Gisbrecht* acknowledged that it is appropriate to "reduce[] the attorney's recovery based on the character of the representation and the results the representation achieved," and cited *Lewis v. Secretary of Health and Human Servs.*, 707 F.2d 246,

11

249-50 (6th Cir. 1983), for the proposition that the amount of a § 406(b) fee award should be reduced "when representation is substandard." *Gisbrecht*, 535 U.S. at 808. Such was the case here.

The issues that required remand of this case to the Commissioner were straightforward; indeed, nothing about the case was particularly complex, and the record was lengthy, but not extraordinarily so. Nonetheless, Little's brief in support of his appeal of the Commissioner's decision raised five issues. As explained in the Court's Entry on Judicial Review, Little's arguments with regard to three of the issues were entirely without merit. Some of the arguments were based on a mischaracterization of the record; others on a misunderstanding of the applicable law. The Court's review of the case, and undoubtedly the Commissioner's as well, was hindered by Little's failure to narrow the issues.[8] Indeed, the adage that "the shotgun approach may hit the target with something but it runs the risk of obscuring significant issues by dilution," *Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 955 (7th Cir. 1996), is apt in this case. Ironically, Little argues that "securing a quick settlement or winnowing down the issues to a single pointed attack rather than a shotgun approach is also not a basis for diminishing a fee or finding a windfall." Little Reply at 10. The Court agrees; however, failing to winnow down the issues and instead utilizing a shotgun approach may be.

In deciding that an award of § 406(b) fees is not appropriate in this case, the Court also has considered Little's conduct in seeking the fee award. As set forth above, Little filed an initial brief in which he sought far more than the statutory ceiling, then filed a brief which he might have

---

[8]Little also inexplicably cited to numerous nonprecedential decisions (unpublished Seventh Circuit decisions, district court decisions, and decisions from other circuits) for propositions that are readily supported by published decisions from the Seventh Circuit Court of Appeals.

intended to be a replacement for his original brief, but which he called a reply brief. Putting aside the procedural irregularities, Little's briefs have substantive problems as well. Of course, the primary problem is that the majority of both briefs is devoted to discussing the propriety of honoring 25% contingency fee agreements in social security cases even if the resultant hourly rate is higher than the hourly rate that would be used under the lodestar method. Of course, those discussions are entirely irrelevant in this case, in which there is no 25% contingency fee agreement.

Little's briefs contain other lapses as well. For example, Little cites *Villano v. Astrue*, 2009 WL 1803131 (N.D. Ind., June 23, 2009), for the proposition that "at least in the Northern District of Indiana, a reasonable range for fees for disability representation falls anywhere between a floor of $8,2350.00 all the way up to $32,949.63." Little fails to acknowledge that the highest award noted in that case for work at the district court level–which is what is at issue in this case–was $12,191.25; as the decision makes clear, the higher awards were all for "combined District Court and Court of Appeals work." Therefore, if one were to apply Little's own logic, one would have to conclude that the fee he is requesting in this case is more than double what would be considered reasonable in the Northern District of Indiana.

Little's reply brief also contains the following passage:

> Although the proposition seems self-evident, it bears repeating here: Sheets hired Little for a result, not to expend a certain amount of time. If Little exceeded the time it might take other counsel in other cases to reach that result, it does not change the value of those services to Sheets. Value to a client remains the same no matter how many hours are expended. *The client is not to be penalized because the attorney handling the case took more time than is prudently necessary.* If it took Little more time than is typical of other attorneys to handle a case, then that might be an indicator of complexity. If it took Little less time than is typical to handle a case, that might be an indicator of relative simplicity.

Little Reply at 10 (emphasis added). Little fails to recognize that it is not his *client* who would be

13

penalized by a lower attorney fee award in this instance, but *himself*. Even more egregiously, Little sums up his position as follows:

> Little seeks a fee of $15,356.25, more if this Court is so persuaded, after having expended 53 hours of attorney time before the District Court to win benefits for Sheets. This fee request falls well within the range of reasonable fees. The value of the services rendered to Sheets as a claimant does not change as more hours of attorney time are expended. The experience and efficiency of counsel should never result in less compensation.

Little Reply at 27. Again, Little fails to acknowledge that $15,356.25 is, by law, the absolute highest amount he could hope to receive in attorney fees in this case from the Court. The Court could not possibly be persuaded to award more. In other words, the fee Little requests is not "well within the range of reasonable fees"; it is at the absolute top of possible fee awards. Further, Little did not expend 53 hours of attorney time; he expended 106 hours of attorney time. The Court found that to be an excessive number of hours and cut it in half. This is the very antithesis of "efficiency of counsel."

Given the quality of Little's representation in this case, and in light of the numerous improper arguments he made in support of his motion for attorney fees, the Court declines to award him attorney fees pursuant to 42 U.S.C. § 406(b). The Commissioner is directed to forward to Mathews-Sheets the funds he has withheld from Mathews-Sheets' past-due benefits award pending this decision.

SO ORDERED: 02/21/2012

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification